IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DATACLOUD TECHNOLOGIES, LLC,          :
                                      :
                 Plaintiff,           :
                                      :
         v.                           :    C.A. No. 21-cv-164-LPS
                                      :
SQUARESPACE, INC,                     :
                                      :
                 Defendant.           :
                                      :

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Dated: May 19, 2021                   Sue L. Robinson (Bar No. 100658)
                                      Brian E. Farnan (Bar No. 4089)
                                      Michael J. Farnan (Bar No. 5165)
                                      FARNAN LLP
                                      919 North Market Street
                                      12th Floor
                                      Wilmington, DE  19801
                                      (302) 777-0300 (Telephone)
                                      (302) 777-0301 (Facsimile)
                                      srobinson@farnanlaw.com
                                      bfarnan@farnanlaw.com
                                      mfarnan@farnanlaw.com

                                      James W. Dabney (admitted *pro hac vice*)
                                      James R. Klaiber (admitted *pro hac vice*)
                                      Lynn M. Russo (admitted *pro hac vice*)
                                      Michael M. Polka (admitted *pro hac vice*)
                                      Justin W. Taylor (admitted *pro hac vice*)
                                      HUGHES HUBBARD & REED LLP
                                      One Battery Park Plaza
                                      New York, NY 10004-1482
                                      (212) 837-6000

                                      *Attorneys for Defendant Squarespace, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ............................................................................................................................... 6

      I.     THE ASSERTED CLAIMS VIOLATE THE "PARTICULARLY
           POINTING OUT" REQUIREMENT OF 35 U.S.C. § 112 ¶ 2 (2006).................. 6

      II.    35 U.S.C. § 112 ¶ 2 PROVIDES A STATUTORY ALTERNATIVE TO
           ANALYSIS OF WHETHER PATENT CLAIMS ARE DIRECTED TO
           "ABSTRACT IDEAS." ........................................................................................ 17

      III.   THE COURT SHOULD RESOLVE THIS CASE QUICKLY AND
           INEXPENSIVELY AT AN EARLY STAGE. ................................................... 20

CONCLUSION........................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Case**                                                                       **Page(s)**

*Alice Corp Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ................................................................................... 18, 20

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016) .......................................................................... 14

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013) ........................................................................................ 18

*Burr v. Duryee,*
    68 U.S. (1 Wall.) 531 (1864) .............................................................................. 8

*Busch v. Jones,*
    184 U.S. 598 (1902) ........................................................................................ 10

*Carnegie Mellon Univ. v. Hoffman-La Roche, Inc.,*
    541 F.3d 1115 (Fed. Cir. 2008) .......................................................................... 14

*Chargepoint, Inc. v. Semaconect, Inc.,*
    920 F.3d 759 (Fed. Cir. 2019) ........................................................................... 18

*Corning v. Burden,*
    56 U.S. (15 How.) 252 (1854) ......................................................................... 7, 8

*Free Stream Media Corp. v. Alphonso Inc,*
    2021 WL 1880931 (Fed. Cir. May 11, 2021) ......................................................... 18

*Fuller v. Yentzer,*
    94 U.S. 288 (1877) ....................................................................................... 8, 9

*General Electric Co. v. Wabash Appliance Corp.,*
    304 U.S. 364 (1938) ....................................................................... 11, 12, 14, 15

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,*
    336 U.S. 271 (1949) ..................................................................................... 1, 13

*Halliburton Oil Well Cementing Co. v. Walker,*
    329 U.S. 1 (1946) .......................................................................... 1, 12, 13, 14

*Helsinn Healthcare, S.A. v. Teva Pharms. USA, Inc.,*
    139 S. Ct. 628 (2019) ........................................................................................ 6

*Holland Furniture Co. v. Perkins Glue Co.,*
    277 U.S. 245 (1928) .............................................................................. 10, 11, 12

# TABLE OF AUTHORITIES
## Cont'd

**Case**                                                                                                      **Page(s)**

*In re Hyatt*,
   708 F.2d 712 (Fed. Cir. 1983) ................................................................ 14

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed Cir. 2016) ................................................................ 18

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ............................................................. 18

*Intellectual Ventures I LLC v. Symantec Corp.*,
   832 F.3d 1307 (Fed. Cir. 2016) ............................................................. 18

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................. 14

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) ............................................................. 18

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005) ............................................................. 14

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................................... 1, 5, 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ......................................................................... 7, 18

*O'Reilly v. Morse*,
   56 U.S. (15 How.) 62 (1854) ................................................. 7, 14, 18, 19

*Risdon Iron & Locomotive Works v. Medart*,
   158 U.S. 68 (1895) ............................................................................ 9

*Shapiro v. United States*,
   335 U.S. 1 (1948) ............................................................................. 6

*TC Heartland LLC v. Kraft Food Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ....................................................................... 6

*United Carbon Co. v. Binney & Smith Co.*,
   317 U.S. 228 (1942) ................................................................... *passim*

## TABLE OF AUTHORITIES

**Cont'd**

**Case**                                                                   **Page(s)**

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004) .......................................................................... 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ..................................................................................... 1, 14

*Westinghouse v. Boyden Power Brake Co.*,
   170 U.S. 537 (1898) ............................................................................ *passim*

**Statutes and Rules**

35 U.S.C. § 101 ................................................................................................ 18

35 U.S.C. § 112 .......................................................................................... *passim*

Fed. R. Civ. P. 12(c) ......................................................................................... 1

## NATURE AND STAGE OF THE PROCEEDINGS

This is an action for alleged patent infringement.  Plaintiff filed its Complaint on February

8, 2021.  D.I. 1.  Defendant filed its Answer on April 30, 2021.  D.I. 13; D.I. 13-1.

Defendant now moves for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  This is Defendant's opening brief in support of its motion.

## SUMMARY OF THE ARGUMENT

"A claim covers and secures a process, a machine, a manufacture, a composition of matter,

or a design, but *never the function or result of either . . . .*"  *Markman v. Westview Instruments,*

*Inc.*, 517 U.S. 370, 373 (1996) (emphasis added) (internal quotations omitted).

In this case, the asserted claims (*see* D.I. 1 ¶¶ 23, 30, 37, 50) describe functions performed

by machines, namely, computer systems (D.I. 13 ¶¶ 58-59, 74-75; 99, 105-06; D.I. 13-1 ¶¶ 2-11);

and under controlling authority, the asserted claims "fall afoul of the rule that a patentee may not

broaden his claims by describing the product in terms of function."  *United Carbon Co. v. Binney*

*& Smith Co*., 317 U.S. 228, 234 (1942); *see, e.g., Graver Tank & Mfg. Co. v. Linde Air Prods.*

*Co.*, 336 U.S. 271, 278 (1949) ("*Graver I*") (claims that recited functional, rather than structural,

characteristics of welding composition held invalid); *Halliburton Oil Well Cementing Co. v.*

*Walker*, 329 U.S. 1, 8-9, 12-14 (1946) (claims that recited functional, rather than structural,

characteristics of echo wave receiver/amplifier held invalid).

The Patent Act of 1952 carried forward, without substantive change, the statutory basis of

the Supreme Court's decisions in *United Carbon*, *Graver I*, *Halliburton*, and their many

predecessor decisions.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 26

(1997) ("The 1952 Patent Act is not materially different from the 1870 Act with regard to claiming,

reissue, and the role of the PTO.").  The Court should dismiss Plaintiff's complaint forthwith.

1

## STATEMENT OF FACTS

Plaintiff's complaint asserts four patents.  D.I. 1 ¶ 1, D.I.1-1 – 1-4.  For purposes of this motion, the Court should assume that the words of the asserted claims have the meaning that the Plaintiff attributed to them in its allegations of infringement.  That assumption underlies Defendant's answer.  D.I. 13-1 ¶ 10.

### U.S. Patent No. 6,560,613 ("'613 Patent")

Asserted claim 8 of the '613 Patent recites (D.I. 1-1 at 28) (emphases added):

8. A method in a computer system for *disambiguating file descriptors*, the method comprising:

*intercepting system calls* that establish a file stored on media;

*storing at least one indicator* that a file descriptor established by an intercepted system call is associated with a file stored on media,

wherein storing an indicator that an established file descriptor is associated with a file stored on media further comprises *storing the indicator in a table*; and

*examining at least one stored indicator* to determine with what file type the file descriptor is associated.

In the context of the above-quoted claim, the italicized words denote functions performed by a computer system.  D.I. 13 ¶¶ 58, 63, 66, 69; D.I. 13-1 ¶¶ 2-11.  The specification of the '613 Patent does not disclose any physical structure that performs the functions recited in the above-quoted claim.  D.I. 13 ¶¶ 60, 64, 67, 70; D.I. 13-1 ¶¶ 2-11.  The specification of the '613 Patent does not disclose any computer program code that causes a computer system to perform the functions recited in the above-quoted claim.  D.I. 13 ¶¶ 61, 65, 68, 71; D.I. 13-1 ¶¶ 2-11.  The above-quoted claim is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim, irrespective of what might be a computer system's physical structure or computer program code.  D.I. 13 ¶ 62; D.I. 13-1 ¶¶ 2-11.

**U.S. Patent No. 6,651,063 (the "'063 Patent")**

Asserted claim 4 of the '063 Patent recites (D.I. 1-2 at 20) (emphases added):

4. A method for *providing information* to one or more users of a system comprising the steps of:

storing information to be provided in an information pack;

*associating with said information pack* at least a user destination address associated with one of a multiplicity of user data repositories each of said user data repositories associated with at least one of said users and a category identifier;

associating with said information pack a provider identifier;

communicating said information pack by means of a network to said user data repository associated with the user destination address,

*locating said information pack* in a location of said user data repository associated with the user destination address reserved for information corresponding to a category to which said category identifier corresponds, and

further comprising, after said step of communicating the information pack to said user data repository associated with the user destination address, the steps of

*creating a custom location* in said user data repository;

placing said information pack in said custom location;

associating a custom category identifier with said information pack;

*sending a custom category signal* to a processing station uniquely associated with said user data repository including a data storage means and a data processing means, said data storage means storing together said custom category identifier and said provider identifier, and *said data processing means analyzing the provider identifier of subsequent of said information packs, comparing said provider identifier of said subsequent information packs with said provider identifier stored in said storage means and in the event of a match between the provider identifier of one of said subsequent information packs and the provider identifier stored in said storage means, placing said one of the subsequent information packs in said custom location*.

In the context of the above-quoted claim, the italicized words denote functions performed by a computer system. D.I. 13 ¶¶ 74, 79, 82, 88, 91, 94; D.I. 13-1 ¶¶ 2-11. The specification of the '063 Patent does not disclose any physical structure that performs the functions recited in the

above-quoted claim.  D.I. 13 ¶¶ 76, 80, 83, 92, 95; D.I. 13-1 ¶¶ 2-11.  The specification of the '063 Patent does not disclose any computer program code that causes a computer system to perform the functions recited in the above-quoted claim.  D.I. 13 ¶¶ 77, 81, 84, 93, 96; D.I. 13-1 ¶¶ 2-11.  The above-quoted claim is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim, irrespective of what might be a computer system's physical structure or computer program code. D.I. 13 ¶ 78; D.I. 13-1 ¶¶ 2-11.

**U.S. Patent No. 8,607,139 (the "'139 Patent")**

Asserted claim 1 of the '139 Patent recites (D.I. 1-3 at 21) (emphases added):

1. A system, comprising:

a processor, coupled to a memory, configured to execute or facilitate execution of computer-executable components, comprising:

a content management component configured to: *display* a graphical interface based on a metadata template, the metadata template comprising an object that represents a structure and an appearance of a web page, wherein the object is based on a class stored in a base template, and wherein the graphical interface comprises an input field corresponding to the object, the input field defining a property of a data entry field, and *generate* a data entry form comprising the data entry field, wherein the data entry field is configured to accept input corresponding to content of the object; and

a web page generator configured to *generate* the web page based on the metadata template, wherein the web page comprises the content represented by the input.

In the context of the above-quoted claim, the italicized words denote functions performed by a computer system.  D.I. 13 ¶ 99; D.I. 13-1 ¶¶ 2-11.  The specification of the '139 Patent does not disclose any physical structure that performs the functions recited in the above-quoted claim. D.I. 13 ¶ 99; D.I. 13-1 ¶¶ 2-11.  The specification of the '139 Patent does not disclose any computer program code that causes a computer system to perform the functions recited in the above-quoted claim.  D.I. 13 ¶ 100; D.I. 13-1 ¶¶ 2-11.  The above-quoted claim is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim,

4

irrespective of what might be a computer system's physical structure or computer program code.

D.I. 13 ¶ 102; D.I. 13-1 ¶¶ 2-11.

**U.S. Patent No. 8,762,498 (the "'498 Patent")**

Asserted claim 1 of the '498 Patent recites (D.I. 1-4 at 10) (emphases added):

1. A method, comprising:

*determining*, by a controller device comprising a processor, a destination internet protocol (IP) address from a plurality of categories for virtual names based on a virtual namespace destination address specified by request data received from a device, wherein a category of the plurality of categories is related to the virtual namespace destination address;

*establishing* a correlation between the destination IP address and a forwarder IP address of a forwarder device; and

*instructing* the forwarder device to send the request data to the destination IP address.

In the context of the above-quoted claim, the italicized words denote functions performed by a computer system. D.I. 13 ¶ 105; D.I. 13-1 ¶¶ 2-11. The specification of the 498 Patent does not disclose any physical structure that performs the functions recited in the above-quoted claim. D.I. 13 ¶ 107; D.I. 13-1 ¶¶ 2-11. The specification of the '498 Patent does not disclose any computer program code that causes a computer system to perform the functions recited in the above-quoted claim. D.I. 13 ¶ 108; D.I. 13-1 ¶¶ 2-11. The above-quoted claim is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim, irrespective of what might be a computer system's physical structure or computer program code. D.I. 13 ¶ 109; D.I. 13-1 ¶¶ 2-11.

*                    *                    *

In sum, the asserted claims characterize computer systems in terms of "function or result," *Markman*, 517 U.S. at 373, and as such "fall afoul of the rule that a patentee may not broaden his claims by describing the product in terms of function." *United Carbon*, 317 U.S. at 234.

5

## ARGUMENT

I.    **THE ASSERTED CLAIMS VIOLATE THE "PARTICULARLY POINTING OUT" REQUIREMENT OF 35 U.S.C. § 112 ¶ 2 (2006).**

35 U.S.C. § 112 ¶ 2 (2006)[1] provides in part:

> The specification shall conclude with one or more claims *particularly pointing out* and distinctly claiming the subject matter which the applicant regards as his invention.

The § 112 phrase, "particularly pointing out," carries forward nearly identical language from the Patent Act of 1870. *See* Act of July 8, 1870, ch. 230, § 26, 16 Stat. 198, 201 ("he shall *particularly point out* and distinctly claim the part, improvement, or combination which he claims as his invention or discovery") (codified in Rev. Stat. § 4888, 18 Stat. 954) (emphasis added). The Patent Act of 1836 contained a similar particularity requirement. *See* Act of July 4, 1836, ch. 357, § 6, 5 Stat. 117, 119 ("he . . . shall *particularly specify and point out* the part, improvement, or combination, which he claims as his own invention or discovery.") (emphasis added).

In reenacting statutory language of the Patent Act of 1870, "Congress must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." *Helsinn Healthcare, S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 634 (2019) (quoting *Shapiro v. United States*, 335 U.S. 1, 16 (1948)); *see TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514, 1520-21 (2017) (quoting A. Scalia & B. Garner, *Reading Law* 322 (2012) ("Prior-Construction Canon")).

In numerous decisions applying the "particularly point[] out" language found, today, in 35 U.S.C. § 112 ¶ 2 (2006) (and 35 U.S.C. § 112(b) (2018)), the Supreme Court has developed and enforced "the rule that a patentee may not broaden his claims by describing the product in terms

---

[1] The asserted patents have priority dates before March 16, 2013, and after November 29, 1999, and thus are subject to the pre-AIA, post-AIPA version of 35 U.S.C. § 112.  D.I. 1-1 – 1-4.

of function." *United Carbon*, 317 U.S. at 234.  To decide this case quickly and economically, the Court need merely apply controlling law to Plaintiff's own characterizations (D.I. 13-1 ¶ 10) of the claims-in-suit.  A review of that law follows.

In *O'Reilly v. Morse*, 56 U.S. (15 How.) 62 (1854), the Court partially reversed a judgment finding infringement of U.S. Patent No. Re. 117 entitled "Electromagnetic Telegraph."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, the marking or printing of intelligible characters at a distance.  *See id.* at 75-76.  The Court upheld claims which pointed out, with reasonable particularity, operative structures disclosed in the patent's specification which accomplished that result, as in: "3. The combination of machinery herein described . . . ."  *Id*. at 85, 112.  But the Court invalidated asserted claim 8, which encompassed "every improvement where the motive power is the electric or galvanic current, and the result is the marking or printing intelligible characters, signs, or letters at a distance."  *Id*. at 112.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court stated: "The court is of opinion that the claim is too broad, and not warranted by law. . . . He can lawfully claim only what he has invented and described, and *if he claims more his patent is void*."  *Id*. at 113, 121 (emphasis added).[2]

In *Corning v. Burden*, 56 U.S. (15 How.) 252 (1854), the Court vacated a judgment finding infringement of U.S. Patent No. 1,890 entitled "Rolling Puddler's Balls in the Manufacture of Iron."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, the formation of cylindrical "puddler's balls" (an intermediate in then-existing iron manufacture) "by continuous pressure and rotation of the ball between converging surfaces."  *Id*. at 267.  The trial

---

[2] In addition to its holding grounded in "[t]he words of the acts of Congress," *id*. at 120, the *Morse* decision separately applied (*id*. at 113-18) a case law doctrine restricting the "tying up of the future use of laws of nature." *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 85 (2012) (citing and quoting *Morse*, 62 U.S. (15 How.) at 113); *see* Part II *infra*.

court held that the Burden patent encompassed "any machine adapted to accomplish the objects of his invention as above specified, by the process, mode, or method above mentioned" and so instructed a jury.  *Id*.  The Supreme Court held that this jury instruction was reversible error, reasoning: "It is for the discovery or invention of some practicable method or means of producing a beneficial result or effect, that a patent is granted, and not for the result or effect itself. . . . [I]t is well settled that a man cannot have a patent for the function or abstract effect of a machine, but only for the machine which produces it. . . . He cannot describe a machine which will perform a certain function, and then claim the function itself, and all other machines that may be invented to perform the same function."  *Id*. at 268, 269.

In *Burr v. Duryee*, 68 U.S. (1 Wall.) 531 (1864), the Court affirmed a judgment of non-infringement of U.S. Patent No. Re. 1,087 entitled "Improvement in Machinery for Making Hat Bodies."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, the formation of "bats" (an intermediate in hat manufacture) of varying thickness required for hat bodies.  *Id*. at 571.  Claim 1 of the patent recited: "The mode of operation, substantially as herein described, of forming bats of fur fibers of the required varying thickness from brim to tip . . . ."  *Id*. at 564.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court stated: "We find here no authority to grant a patent for a 'principle' or a 'mode of operation' or an *idea*, or any other abstraction. . . . All others have an equal right to make improved machines, provided that they do not embody the same, or substantially the same devices, or combination of devices, which constitute the peculiar characteristic of the previous invention."  *Id*. at 570-71.

In *Fuller v. Yentzer*, 94 U.S. 288 (1877), the Court affirmed a judgment of non-infringement of U.S. Patent No. 28,633 entitled "Sewing Machine Guide."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, the putting of "markers" on cloth

to guide subsequent sewing of plaits or tucks.  Claim 1 of the patent recited: "[F]orming one, two, or more creases in cloth by means of markers on opposite sides of the cloth . . . ."  *Id*. at 290.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court stated:

> Patents for a machine will not be sustained if the claim is for a result, the established rule being that the invention, if any, within the meaning of the Patent Act, consists in the means or apparatus by which the result is obtained, and not merely in the mode of operation, independent of the mechanical devices employed; nor will a patent be held valid for a principle or for an idea, or any other mere abstraction.

94 U.S. at 288 (citing *Burr*).

In *Risdon Iron & Locomotive Works v. Medart*, 158 U.S. 68 (1895), the Court reversed a judgment of infringement of U.S. Patent No. 248,599 entitled "Manufacture of Belt Pulleys."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, more efficient manufacture of balanced belt-pulley spiders (hub and spoke structures).  *Id*. at 79.  In an apparent attempt to draft around the holdings in *Morse*, *Corning*, *Burr*, and *Fuller*, the asserted claims recited an "improvement in the *art* of manufacturing belt pulleys."  *Id*. at 69 (emphasis added).  Citing its earlier precedents in this area, the Court stated:

> [A] valid patent cannot be obtained for a process which involves nothing more than the operation of a piece of mechanism, or, in other words, for the function of a machine . . . . [A]ll that he invented in fact was a machine for the more perfect manufacture of such pulleys. The operation or function of such machine, however, is not patentable as a process.

*Id*. at 77, 79 (citing and following *Morse* and *Corning*).

In *Westinghouse v. Boyden Power Brake Co*., 170 U.S. 537 (1898), the Court affirmed a judgment of non-infringement of U.S. Patent No. 360,070 entitled "Fluid Pressure Brake Mechanism."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, the simultaneous transmission of train pipe air (having a first pressure) and auxiliary tank air (having a second, higher pressure) into a brake cylinder for emergency stops.  *Id.* at 538-39.  Claim 2 of the patent recited "a piston, whose preliminary traverse admits air from the auxiliary

reservoir to the brake cylinder, and which by a further traverse admits air directly from the main air-pipe to the brake-cylinder, substantially as set forth." *Id.* at 553.  Citing and following *Corning*, *Burr*, and *Fuller*, the Court stated: "if it be interpreted simply as a claim for the function of admitting air to the brake-cylinder directly from the train-pipe, it is open to the objection, held in several cases to be fatal, that the mere function of a machine cannot be patented. . . . [E]ven if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result.  He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."  *Id*. at 554, 569; *see also id*. at 562 ("the function of a machine cannot be patented").

In *Busch v. Jones*, 184 U.S. 598 (1902), the Court reversed a judgment of infringement of U.S. Patent No. 204,741 entitled "Book-Binders' Dry-Press and Sheet Tie."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, more efficient removal of type indentations from printed sheet material.  *Id*. at 601-02.  Claim 5 of the patent recited: "The process herein described for treating folded printed sheets of paper in dry pressing . . . ."  *Id*. at 607.  The Court stated: "it is impossible to consider the fifth claim as describing anything but the operation and effect of the press."  *Id*.  On that basis the Court reversed the judgment of infringement, utilizing the same reasoning that was applied in *Corning* and *Risdon*.  *Id*. at 608.

In *Holland Furniture Co. v. Perkins Glue Co*., 277 U.S. 245 (1928), the Court reversed a judgment of infringement of U.S. Patent No. Re. 13,436 entitled "Glue and Method of Making the Same."  The patent disclosed a processed starch that, when mixed with three parts by weight of water and an alkali ingredient, achieved a certain result, namely, a glue composition having a viscosity and tensile strength suitable for use in wood working trades.  *Id*. at 255.  Claim 30 of the patent recited: "A wood and fiber glue formed of *a starchy carbohydrate* or its equivalent by union

therewith of about 3 parts or less by weight of water and alkali metal hydroxid." *Id*. at 250 (emphasis added).  The patentee took the position that the claim encompassed a glue comprising any and every "starchy carbohydrate" mixed with three parts by weight of water, whether or not the "starchy carbohydrate" was prepared by the process described in the patent.  *Id*. at 254. Construing and applying the predecessor of 35 U.S.C. § 112 ¶ 2, the Court held that the asserted claims were invalid:

> That the patentee may not by claiming a patent on the result or function of a machine extend his patent to devices or mechanisms not described in the patent is well understood. . . . Respondent argues that this principle, applicable to machine patents, is inapplicable to a patent for the composition of matter which is always a result of a process and, concededly is patentable as such, but the attempt to broaden product claims by describing the product exclusively in terms of its use or function is subject to the same vice as is the attempt to describe a patentable device or machine in terms of its function.  As a description of the invention it is insufficient and if allowed would extend the monopoly beyond the invention.

277 U.S. at 257-58 (citing *Morse*, *Westinghouse*, *Risdon*, *Fuller*, and other cases).

In *General Electric Co. v. Wabash Appliance Corp*., 304 U.S. 364 (1938), the Court affirmed a judgment of invalidity of claims 25-27 of U.S. Patent No. 1,410,499 entitled "Metal and Its Manufacture."  The patent disclosed a tungsten alloy that, when used as an incandescent lamp filament, achieved a certain result, namely, increased service life due to reduced "sagging" and "offsetting."  *Id*. at 366-67.   Claim 25 of the patent recited: "A filament for electric incandescent lamps or other devices, composed substantially of tungsten and made up mainly of a number of comparatively large grains *of such size and contour as to prevent* substantial sagging and offsetting during a normal or commercially useful life . . . ."  *Id*. at 368 (emphasis added). Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court held that the italicized phrase was "inadequate as a description of the structural characteristics of the grains" (304 U.S. at 369) and thus fell "within the condemnation of the doctrine that a patentee may not broaden his product claims by describing the product in terms of function."  *Id*. at 370 (citing

11

*Holland Furniture*).  This was so even though the patent specification included an enabling description of how to make a filament that functioned in the claimed manner.  *Id*. at 373-75.

In *United Carbon*, the Court reversed a judgment of infringement of U.S. Patent No. 1,889,429 entitled "Carbon Black and Process of Making Same."  The patent disclosed a process that, when performed, achieved a certain result, namely, "pellets" of carbon black "formed without use of any binder, sufficiently hard and flowable to prevent the formation of dust, yet sufficiently friable and dispersible for use as a component in the manufacture of rubber and other products." 317 U.S. at 230.  Claim 1 of the patent recited: "Sustantially [sic] pure carbon black in the form of commercially uniform, comparatively small, rounded, smooth aggregates having a *spongy porous* interior."  *Id*. at 231.  In the context of this claim, the terms "spongy" and "porous" characterized a functional characteristic of carbon black aggregates, namely, their "friability" or tendency to crumble under pressure.  *Id*. at 233.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court held that the terms "spongy" and "porous" were "but inaccurate suggestions of the functions of the product, and fall afoul of the rule that a patentee may not broaden his claims by describing the product in terms of function."  *Id*. at 234 (citing *Holland Furniture* and *Gen. Elec. v. Wabash*).

In *Halliburton*, the Court reversed a judgment of infringement of U.S. Patent No. 2,156,519 entitled "Means for Measuring the Location of Obstructions in Wells."  The patent disclosed apparatus that, when operated, achieved a certain result, namely, amplifying echo waves from well tubing collars and eliminating echo waves from other obstructions.  329 U.S. at 7.  Claim 1 of the patent recited apparatus comprising "means associated with said pressure responsive device for tuning said receiving means to the frequency of echoes from the tubing collars of said tubing sections to clearly distinguish the echoes from said couplings from each other."  *Id*. at 8-9.  The

only written description support for this recital was a tubular pipe whose length could be adjusted to make it function as "a mechanical acoustic resonator." *Id*. at 7.  The patentee, Walker, asserted infringement based on the defendant's use of apparatus comprising an *electric filter* to catch and record echoes from well tubing collars (*id*. at 12), a litigation position that did not require *structural* equivalence between the claimed invention and the accused apparatus.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2 (2006), the Court held that the asserted claims "failed adequately to depict the structure, mode, and operation of the parts in combination." *Id*. at 9.  The Court reasoned: "if Walker's blanket claims be valid, no device to clarify echo waves, now known or hereafter invented, whether the device be an actual equivalent of Walker's ingredient or not, could be used in a combination such as this, during the life of Walker's patent." *Id*.  at 12.

In *Graver I*, the Court partially reversed a judgment finding infringement of U.S. Patent No. 2,043,960 entitled "Electric Welding."  The patent disclosed a flux composition that, when used in electric welding, achieved a certain result, namely, more rapidly formed welds at higher voltages and with less porosity, smoke, splatter, and visible arcing.  336 U.S. at 274.  Construing and applying the statutory predecessor of 35 U.S.C. § 112 ¶ 2, the Court upheld claims which pointed out, with reasonable particularity, the ingredients of operative compositions that were disclosed in the patent's specification.  336 U.S. at 274-75.  But the Court invalidated multiple claims that made no "specific reference to the essential chemical constituents of the welding composition to be used in the claimed welding process." *Id*. at 278.

Today, patent applicants have an option that did not exist at the time of the decisions cited above.  That option is 35 U.S.C. § 112 ¶ 6 (2006), which provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function, without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover

13

the corresponding structure, material, or acts described in the specification and equivalents thereof."  The rule of construction prescribed in 35 U.S.C. § 112 ¶ 6 permits use of "means for" claim recitals as an exception to "the rule that a patentee may not broaden his claims by describing the product in terms of function."  *United Carbon*, 317 U.S. at 234; *see Warner-Jenkinson*, 520 U.S. at 27 (quoting *Halliburton*, 329 U.S. at 8) (quoting *Gen. Elec. v. Wabash*, 304 U.S. at 371)).

But for claims, like those quoted on pp. 2-5, which *do not* invoke 35 U.S.C. § 112 ¶ 6, the reasoning and holdings of the Supreme Court's decisions applying "the rule that a patentee may not broaden his claims by describing the product in terms of function" *United Carbon*, 317 U.S. at 234, remain fully applicable.  *See, e.g., Carnegie Mellon Univ. v. Hoffman-La Roche, Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) ("It has long been the case that a patentee 'can lawfully claim only what he has invented and described, and if he claims more his patent is void.'") (quoting *Morse*, 56 U.S. (15 How.) at 121).[3]  *Carnegie Mellon* invalidated claims that, like the claims-in-suit here, described a product in terms of its functions and, in so doing, encompassed subject matter that the patent specification did not describe.  *Id*. at 1126.

The case law summarized on pp. 6-13, *supra*, explains what is meant by the words "function" and "result" in the statement: "A claim covers and secures a process, a machine, a manufacture, a composition of matter, or a design, but *never the function or result of either* . . . ." *Markman*, 517 U.S. at 373 (emphasis added).  And as applied here, that case law compels a

---

[3] *Accord LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (citing *Morse* and invalidating claims under 35 U.S.C. § 112); *Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916, 929 & n.9 (Fed. Cir. 2004) (citing *Morse* and invalidating claims under 35 U.S.C. § 112); *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) (citing *Morse* and invalidating claims under 35 U.S.C. § 112); *cf. Apple, Inc. v. Ameranth, Inc*., 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("Generally, a claim that merely describes an 'effect or result dissociated from any method by which [it] is accomplished' is not directed to patent-eligible subject matter.") (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015)).

conclusion that the claims-in-suit, like the claims held invalid in *Graver I*, *Halliburton*, *United Carbon*, *Gen. Elec. v. Wabash*, *Holland Furniture*, *Morse*, *Carnegie Mellon*, *LizardTech*, *Rochester*, and *Hyatt*, describe elements of the alleged inventions in terms of "function or result" (517 U.S. at 373), in clear violation of 35 U.S.C. § 112 ¶ 2 and "the rule that a patentee may not broaden his claims by describing the product in terms of function." *United Carbon*, 317 U.S. at 234 (citing *Holland Furniture* and *Gen. Elec. v. Wabash*).

**'613 Patent**.  As noted on p. 2, *supra*, claim 8 of the '613 Patent recites "intercepting system calls," "storing at least one indicator," "storing the indicator in a table," and "examining at least one stored indicator."  Under the reasoning of the case law cited in pp. 6-13, *supra*, each of these claim recitals describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562.  Under the reasoning of the case law cited on pp. 6-13, *supra*, the '613 Patent claim term "disambiguating" describes a "result" of a machine's operation, in the same way as did the results of the apparatus at issue in *Halliburton*, *Westinghouse*, *Risdon*, *Fuller*, *Burr*, *Corning*, *Morse*, and *Ameranth*.  And as with the claims held invalid in *Halliburton* and *Morse*, claim 8 of the '613 Patent is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim.  D.I. 13 ¶ 62; D.I. 13-1 ¶¶ 2-11. On its face, claim 8 of the '613 Patent violates the "particularly pointing out" provision of 35 U.S.C. § 112 ¶ 2 and its associated "rule that a patentee may not broaden his claims by describing the product in terms of function." *United Carbon*, 317 U.S. at 234.

**'063 Patent**.  As noted on p. 3, *supra*, claim 4 of the '063 Patent recites "associating with said information pack," "locating said information pack," "creating a custom location," "sending a custom category signal," "analyzing the provider identifier," and "placing said one of the subsequent information packs in said custom location."  Under the reasoning of the case law cited

in pp. 6-13, *supra*, each of these claim recitals describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562.   Under the reasoning of the case law cited on pp. 6-13, *supra*, the '063 Patent claim terms "providing" and "placing" describe "result[s]" of a machine's operation, in the same way as did the results of the apparatus at issue in *Halliburton*, *Westinghouse*, *Risdon*, *Fuller*, *Burr*, *Corning*, *Morse*, and *Ameranth*.   And as with the claims held invalid in *Halliburton* and *Morse*, claim 4 of the '063 Patent is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim.   D.I. 13 ¶ 78; D.I. 13-1 ¶¶ 2-11.   On its face, claim 4 of the '063 patent violates the "particularly pointing out" provision of 35 U.S.C. § 112 ¶ 2 and its associated "rule that a patentee may not broaden his claims by describing the product in terms of function."  *United Carbon*, 317 U.S. at 234.

**'139 Patent**.   As noted on pp. 4-5, *supra*, claim 1 of the '139 Patent recites "display a graphical user interface based on a metadata template," "generate a data entry form," and "generate the web page based on the metadata template."   Under the reasoning of the case law cited in pp. 6-13, *supra*, each of these claim recitals describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562.   Under the reasoning of the case law cited on pp. 6-13, *supra*, the '139 Patent claim term "configured to execute or facilitate the execution of computer-executable components" describes a "result" of a machine's operation, in the same way as did the results of the apparatus at issue in *Halliburton*, *Westinghouse*, *Risdon*, *Fuller*, *Burr*, *Corning*, *Morse*, and *Ameranth*.   And as with the claims held invalid in *Halliburton* and *Morse*, claim 1 of the '139 Patent is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim.   D.I. 13 ¶ 102; D.I. 13-1 ¶¶ 2-11.   On its face, claim 1 of the '139 Patent violates the "particularly pointing out" provision of 35

U.S.C. § 112 ¶ 2 and its associated "rule that a patentee may not broaden his claims by describing the product in terms of function." *United Carbon*, 317 U.S. at 234.

**'498 Patent**.  As noted on p. 5, *supra*, claim 1 of the '498 Patent recites "determining . . . a destination internet protocol (IP) address," "establishing a correlation between the destination IP address and a forwarder IP address," and "instructing the forwarder device to send the request data to the destination IP address."  Under the reasoning of the case law cited in pp. 6-13, *supra*, each of these claim recitals describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562.  Under the reasoning of the case law cited on pp. 6-13, *supra*, the '498 Patent claim term "establishing a correlation" also describes a "result" of a machine's operation, in the same way as did the results of the apparatus at issue in *Halliburton*, *Westinghouse*, *Risdon*, *Fuller*, *Burr*, *Corning*, *Morse*, and *Ameranth*.  And as with the claims held invalid in *Halliburton* and *Morse*, claim 1 of the '498 Patent is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim.  D.I. 13 ¶ 109; D.I. 13-1 ¶¶ 2-11.  On its face, claim 1 of the '498 Patent violates the "particularly pointing out" provision of 35 U.S.C. § 112 ¶ 2 and its associated "rule that a patentee may not broaden his claims by describing the product in terms of function."  *United Carbon*, 317 U.S. at 234.

## II.  35 U.S.C. § 112 ¶ 2 PROVIDES A STATUTORY ALTERNATIVE TO ANALYSIS OF WHETHER PATENT CLAIMS ARE DIRECTED TO "ABSTRACT IDEAS."

As noted above (*see* p. 7 n.2, *supra*), the Supreme Court's *Morse* decision rested on two alternative grounds.  The first, and better-known, ground of decision in *Morse* was a holding that limited the *type* of subject matter that can be patented: "Laws of nature, natural phenomena, and abstract ideas are *not patentable*." *Alice Corp Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (emphasis added) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576,

589 (2013) (citing *Morse*)).  *Morse* is often cited as authority supporting holdings that claims are directed to subject matter falling outside of 35 U.S.C. § 101.  *See, e.g.*, *Chargepoint, Inc. v. Semaconect, Inc.*, 920 F.3d 759, 769 & n.5 (Fed. Cir. 2019); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342-43 (Fed. Cir. 2018).  Similarly here, the asserted claims could be analyzed for whether they are "directed to" "abstract ideas" and, if so, whether they nevertheless recite "an 'inventive concept.'"  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 72-73).[4]

There is, however, a far more predictable, administrable, and well-developed legal standard available: "the rule that a patentee may not broaden his claims by describing the product in terms of function."  *United Carbon*, 317 U.S. at 234.  This "rule" is based on the "particularly pointing out" language of 35 U.S.C. § 112 ¶ 2 (2006) and flows from *Morse*'s second ground of decision, namely, that "independently of judicial authority, we do not think that *the language used in the act of Congress*, can justly be expounded otherwise."  56 U.S. (15 How.) at 118.  Construing and applying the statutory predecessor of 35 U.S.C. § 112, the *Morse* decision states:

> Whoever discovers that a certain useful result will be produced, in any art, machine, manufacture, or composition of matter, by the use of certain means, is entitled to a patent for it; provided he specifies the means he uses in a manner so full and exact, that anyone skilled in the science to which it appertains, can, by using the means he specifies, without any addition to, or subtraction from them, produce precisely the result he describes. And if this cannot be done by the means he describes, the patent is void. *And if it can be done, then the patent confers on him the exclusive right to*

---

[4] To illustrate: claim 8 of the '613 Patent recites "[a] method in a computer system for disambiguating file descriptors" comprising "intercepting," "storing," and "examining" steps. D.I. 1-1 at 28.  This "method" is very similar in form and substance to a "method" that was held to describe an unpatentable "abstract idea" in *Intellectual Ventures I LLC v. Symantec Corp.*, 832 F.3d 1307, 1313 (Fed. Cir. 2016); *see id.* ("[a] method for identifying characteristics of data files" comprising "receiving," "determining," and "outputting" steps).  Similar "abstract idea" analysis could be applied to all of the asserted claims in this case.  *Cf. Free Stream Media Corp. v. Alphonso Inc*, 2021 WL 1880931, at *2 (Fed. Cir. May 11, 2021) (invalidating claims similar to '498 Patent claim 1); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017) (invalidating claims similar to '139 Patent claim 1); *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016) (invalidating claims similar to '063 Patent claim 4).

18

*use the means he specifies to produce the result or effect he describes, and nothing more.* And it makes no difference, in this respect, whether the effect is produced by chemical agency or combination; or by the application of discoveries or principles in natural philosophy known or unknown before his invention; or by machinery acting altogether upon mechanical principles. In either case he must describe the manner and process as above mentioned, and the end it accomplishes. And anyone may lawfully accomplish the same end without infringing the patent, if he uses means substantially different from those described.

Indeed, if the eighth claim of the patentee can be maintained, there was no necessity for any specification, further than to say that he had discovered that, by using the motive power of electro-magnetism, he could print intelligible characters at any distance. We presume it will be admitted on all hands, that no patent could have issued on such a specification. *Yet this claim can derive no aid from the specification filed. It is outside of it, and the patentee claims beyond it.* And if it stands, it must stand simply on the ground that the broad terms above mentioned were a sufficient description, and entitled him to a patent in terms equally broad. In our judgment the act of Congress cannot be so construed. . . .

Now, in this case, there is no description but one, of a process by which signs or letters may be printed at a distance. And yet he claims the exclusive right to any other mode and any other process, although not described by him, by which the end can be accomplished, if electro-magnetism is used as the motive power. That is to say – *he claims a patent, for an effect produced by the use of electro-magnetism distinct from the process or machinery necessary to produce it.* The words of the acts of Congress above quoted show that no patent can lawfully issue upon such a claim. . . . The evil is the same if he claims more than he has invented, although no other person has invented it before him. He prevents others from attempting to improve upon the manner and process which he has described in his specification- and may deter the public from using it, even if discovered. *He can lawfully claim only what he has invented and described, and if he claims more his patent is void.*

*Morse*, 56 U.S. (15 How.) 119-21 (emphasis added).

Substitute the phrase "a computer system" for "electromagnetism"; and substitute the functions or results recited in the asserted claims here (e.g., "intercepting"; "storing"; "examining"; "associating"; "placing", "generate" etc.) for "print[ing] intelligible characters at any distance," and the *Morse* decision reasoning quoted above is fully applicable to this case and this is so regardless of whether the asserted claims might also be deemed "directed to" "abstract ideas" and to lack "inventive concept[s]." *Alice*, 573 U.S. at 217.

III.   **THE COURT SHOULD RESOLVE THIS CASE QUICKLY AND INEXPENSIVELY AT AN EARLY STAGE.**

Patent litigation is notoriously expensive.  The cost of defending claims for alleged patent infringement, no matter how flimsy such claims might be, is such as to prompt many defendants to pay nuisance value to settle infringement claims for less than the cost of seeking early dismissal on motion.  Enforcement of the law identified in Part I, *supra*, would reduce the drain on judicial and party resources that much current-day patent litigation needlessly generates.

The inventors named in the asserted patents were free to seek patent protection for novel, useful, and non-obvious *structures* they might have developed to perform the functions or achieve the results recited in the asserted claims, as with claims 1-7 of the Morse patent upheld in *Morse* and claims 18, 20, 22, and 23 of the Jones et al. patent upheld in *Graver I*.  But they could not rightly patent the functions or results themselves.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint on the basis that the claims in suit are invalid under 35 U.S.C. § 112 ¶ 2.

Dated: May 19, 2021                    Respectfully submitted,

                                       FARNAN LLP


                                        /s/ Michael J. Farnan
                                       Sue L. Robinson (Bar No. 100658)
                                       Brian E. Farnan (Bar No. 4089)
                                       Michael J. Farnan (Bar No. 5165)
                                       919 North Market Street
                                       12th Floor
                                       Wilmington, DE  19801
                                       (302) 777-0300 (Telephone)
                                       (302) 777-0301 (Facsimile)
                                       srobinson@farnanlaw.com
                                       bfarnan@farnanlaw.com
                                       mfarnan@farnanlaw.com

                                       James W. Dabney (admitted *pro hac vice*)
                                       James R. Klaiber (admitted *pro hac vice*)
                                       Lynn M. Russo (admitted *pro hac vice*)
                                       Michael M. Polka (admitted *pro hac vice*)
                                       Justin W. Taylor (admitted *pro hac vice*)
                                       HUGHES HUBBARD & REED LLP
                                       One Battery Park Plaza
                                       New York, NY  10004-1482
                                       T: 212.837.6000
                                       F: 212.422.4726
                                       james.dabney@hugheshubbard.com
                                       james.klaiber@hugheshubbard.com
                                       lynn.russo@hugheshubbard.com
                                       michael.polka@hugheshubbard.com
                                       justin.taylor@hugheshubbard.com

                                       **ATTORNEYS FOR DEFENDANT
                                       SQUARESPACE, INC.**