# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC, | CIVIL ACTION NO. 1:21-cv-00164-LPS |
| Plaintiff, | **Chief Judge Leonard P. Stark** |
| v. | |
| SQUARESPACE, INC., | |
| Defendant. | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO [D.I. 24] DEFENDANT'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff DATACLOUD TECHNOLOGIES, LLC ("DataCloud") hereby opposed the Renewed Motion For Judgment On The Pleadings filed by Defendant SQUARESPACE, INC., ("Squarespace") under Fed. R. Civ. Proc. 12(c) (D.I. 24 and 25; the "Motion"), which seeks a ruling that the claims of U.S. Patent Nos. 6,560,613 (the "'613 Patent"), 6,651,063 (the "'063 Patent"), 8,607,139 (the "'139 Patent"), 8,762,498 (the "'498 Patent"), 7,209,959 (the "'959 Patent"), 7,246,351 (the "'351 Patent"), and 7,398,298, (the "'298 Patent") (collectively, the "Patents-in-Suit") are indefinite.

This Opposition is filed concurrently with DataCloud's Motion for Leave to Correct and Amend Its First Amended Complaint [D.I. 21].

Dated: <u>August 11, 2021</u>         Respectfully submitted,

                                        **Stamoulis & Weinblatt, LLC**

                                        */s/ Stamatios Stamoulis*
                                        Stamatios Stamoulis (#4606)
                                        800 N. West Street Third Floor
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 999-1540
                                        Email: stamoulis@swdelaw.com

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................ **iii**

**I.    NATURE AND STAGE OF THE PROCEEDINGS**................................**2**

**II.   SUMMARY OF ARGUMENT**......................................................................**2**

**III.  STATEMENT OF FACTS** ............................................................................**5**

**IV.   ARGUMENT**...................................................................................................**5**

    **A.  THE MOTION ASKS THIS COURT TO INVALIDATE THE CLAIMS OF THE PATENTS-IN-SUIT PURSUANT TO LAW THAT IS UNIVERSALLY RECOGNIZED AS OBSOLETE.** ........................................................................**6**

    **B.  SQUARESPACE ASKS THIS COURT TO FIND THAT THE CLAIMS OF THE PATENTS-IN-SUIT ARE INDEFINITE WITHOUT ANY ANALYSIS OR FACTUAL RECORD.** ........................................................................**8**

    **C.  EVEN IF SQUARESPACE IS CORRECT THAT EVERY CLAIM USES PURELY FUNCTIONAL LANGUAGE, THE TERMS IDENTIFIED IMPART SUFFICIENT STRUCTURE TO SKILLED ARTISANS.** ..................................**11**

**V.    CONCLUSION** ............................................................................................**15**

# **TABLE OF AUTHORITIES**

**Cases**

*Alcon Research, Ltd. v. Barr Laboratories Inc.*, No. 09-CV-0318-LDD, 2011 WL 3901878 (D. Del. Sep. 6, 2011) .................................................................................................................. 4

*BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360 (Fed. Cir. 2017) .................................. 2, 10

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015) .............................. 3, 10

*Burr v. Duryee*, 68 U.S. 531 (1864) ............................................................................................... 8

*Busch v. Jones*, 184 U.S. 598 (1902) ............................................................................................. 9

*Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 F. App'x 876 (Fed. Cir. 2018) ....................... 9

*Corning v. Burden*, 56 U.S. 252 (1854) ........................................................................................ 8

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224 (Fed. Cir. 2016), *cert. denied*, 137 S.Ct. 2267, 198 L.Ed.2d 699 (2017) ............................................................... 8, 10

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F.Supp.3d 629 (E.D. Tex. 2017), *affirmed*, 739 F.App'x 643 (Fed. Cir. 2018), *cert. denied*, Eli Lilly & Co. v. Erfindergemeinschaft UroPep GbR, 140 S. Ct. 449, 205 L.Ed.2d 252 (Oct. 21, 2019) ............ 8

*Fuller v. Yentzer*, 94 U.S. 288 (1877) ............................................................................................ 8

*General Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364 (1938) ....................................... 9

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 336 U.S. 271 (1949) ........................................ 9

*Greenberg v. Ethicon Endo-Surgery Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) ...................... 2, 3, 7, 11

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ......................... 3, 10

*Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1 (1946) ...................................... 2, 8, 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014) ..................................... 10

*Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245 (1928) ................................................. 9

*In re: Fuetterer*, 319 F.2d 259 (C.C.P.A. 1963) ........................................................................... 7

*In re: Swinehart*, 439 F.2d 210 (CCPA 1971) ............................................................................ 10

*Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357 (Fed. Cir. 2003) ............................................... 3, 9

*Jamison v. Olin Corp.-Winchester Div.,* No. 03-1036-KI, 2005 U.S. Dist. LEXIS 49109 (D. Or. Oct. 4, 2005) .................................................................................................................. 7

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008) 10, 11

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) ........................... 11

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 577 U.S. 1009 (2015) .................................................. 8

*O'Reilly v. Morse*, 56 U.S. 62 (1854) ........................................................................................ 2, 8

*Risdon Iron & Locomotive Works v. Medart*, 158 U.S. 68 (1895) ......................................... 9, 10

*ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355 (Fed. Cir. 2014) ................................. 4

*Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017) ................................... 9

*Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008) ........................... 9

*TecSec, Inc. v. Int'l Bus. Machs. Corp.,* 731 F.3d 1336 (Fed. Cir. 2013) ...................................... 11

*Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318 (2015) ........................................................ 9

*Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000) ................................... 4

*United Carbon Co. v. Binney & Smith Co*., 317 U.S. 228 (1942) .............................................. 2, 9

*Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039 (Fed. Cir. 1993) ......................... 2, 6

*Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355 (Fed. Cir. 2011) ....................................... 10

*Westinghouse v. Boyden Power Brake Co*., 170 U.S. 537 (1898) .................................................. 9

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) ............................... 3

**<u>Statutes</u>**

35 U.S.C. § 101 ................................................................................................................................ 6

35 U.S.C. § 112(6) .......................................................................................................................... 2

Squarespace's Motion defies reason.  It actually asks this Court to find that *one hundred and forty-four claims* from *seven different patents* and *six different sets of inventors* prosecuted by *seven different law firms* before *nine different examiners* all have the very same defect: they are supposedly void for use of functional language.  Not only is this implausible on its face, but the principal relied on by Squarespace in those cases was abrogated by Congress in the 1952 Patent Act, which overruled *Halliburton* and its proposition that a patentee may not describe the point of novelty in terms of function.  Squarespace advances this position, nonetheless, hoping to resurrect law buried long ago in twelve opinions issued between the time Abraham Lincoln gave his "Peoria speech" and the end of the Nuremburg trial.

But even if the Motion was not a clear overreach based on outdated law, the relief sought must be made on a developed factual record and after claim construction proceedings, not on the pleadings.  That is to say that, even if all one hundred and forty-four claims were described in terms of function, the law is clear that functional language is perfectly permissible in claiming one's invention if that language imparts structure reasonably certain to a skilled artisan.  That determination, of course, requires a developed factual record, including expert testimony.  Indeed, the cases cited by Squarespace, each of which were issued on a full factual record, illustrate this.

In any event, this is not a case of functional claiming at the point of novelty, which was the concern of the *Halliburton* Court.  Quite the opposite, Squarespace complains about steps in method claims like "intercepting system calls," "storing," "sending," and "instructing," which summon well understood meaning in the art and therefore are sufficiently structural.  At its core, the Motion is a tedious history of case law issued between 1854 and 1946, followed by rote analysis in the form of a single paragraph, repeated seven times over (once for each patent), that lacks any meaningful evaluation of the targeted terms.  The Motion is frivolous and should be denied.

**I.      NATURE AND STAGE OF THE PROCEEDINGS**

DataCloud adopts Squarespace's Nature and Stage of Proceedings, while adding only that it is has moved for leave to correct/amend its complaint concurrently with this Opposition.

**II.     SUMMARY OF ARGUMENT**

1. Squarespace takes the inconceivable position that every claim of the Patents-in-Suit is indefinite due to the patentees' alleged use of functional claiming.[1] In doing so, it cites cases from *Morse*[2] to *United Carbon*[3] to *Halliburton*,[4] relying on a proposition that a patentee may not broaden his claims by describing the product in terms of function. *See, e.g.* Motion, at pp. 1 and 3 (citing *Halliburton,* 329 U.S. at 7-8; *United Carbon*, 317 U.S. at 234). However, the authority that forms the foundation of the Motion is universally recognized as overruled. *See Greenberg v. Ethicon Endo-Surgery Inc.*, 91 F.3d 1580, 1584 (Fed. Cir. 1996); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993).

2. Hoping to avoid the consequence of this truth, Squarespace explicitly argues that the claim terms here are functional but "*do not* invoke 35 U.S.C. § 112 ¶ 6," and based on this premise, it concludes that *Halliburton* "remain[s] fully applicable." *See* Motion, p. 10. But this argument, which is premised on the idea *Halliburton* outlaws functional claims that fall outside § 112(6), has likewise been continually rejected. *See, e.g., BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017); *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374,

---

[1] Although Squarespace focused on the seven claims specifically identified in the operative complaint, DataCloud pled that Squarespace infringes "one or more" claims from each Patent-in-Suit, so by asking for dismissal, they are advancing the proposition that all claims of the Patents-in-Suit are indefinite.
[2] *O'Reilly v. Morse*, 56 U.S. 62 (1854).
[3] *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228 (1942).
[4] *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1 (1946).

1378 (Fed. Cir. 2015) (quoting *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008)); *see also, infra*, fn. 5.

3. Even assuming the Motion was advanced on sound law, and it is not, the relief sought—a finding of indefiniteness on all claims—should not be granted without a meaningful analysis of each of targeted claim terms and upon a developed factual record and after claim construction proceedings. Like claim construction, definiteness is a question of law; however, any critical fact underlying a finding of indefiniteness must be proven by the challenger with clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). However, in making its argument, Squarespace provides no real analysis of any claim term. Instead, it provides a formulaic one paragraph summary of twelve Supreme Court cases (Motion, pp. 3-10), followed by a cursory, one paragraph argument on indefiniteness that is repeated almost verbatim for each of the seven Patents-in-Suit, the only difference between the paragraphs being that the claim number and language are substituted (*see* Motion, pp. 11-15).

4. An indefiniteness challenge should be considered on a developed factual record that incorporates evidence, expert and otherwise. Even the cases cited by Squarespace, from *Morse* to *Graver I*, were issued on a complete factual record. "What is important is not simply that a [claim term] is defined in terms of what it does, but that the term, as the name for structure, ***has a reasonably well understood meaning in the art***." *Greenberg*, 91 F.3d at 1583 (emphasis added); *see also Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*) (for functional terms lacking the word "means," "[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'"). "The primary consideration is factual and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure."

*Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996 (Fed. Cir. 2000); *see also ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014). For this reason, courts often defer the issue of indefiniteness until even after claim construction, including at summary judgment or trial. *See, e.g., Alcon Research, Ltd. v. Barr Laboratories Inc.*, No. 09-CV-0318-LDD, 2011 WL 3901878, *16 (D. Del. Sep. 6, 2011) ("We find that the indefiniteness issue is best decided at trial and defer consideration on it until that time."). In the end, even if Squarespace's implausible positions are credited, the relief sought by Squarespace is premature without a full factual record and construction of the claims.

  5. Finally, and as the Court has already seen, Squarespace has seized on an admitted error DataCloud made when filing its Amended Complaint, and the Motion uses that error to argue that "the new allegations in D.I. 21 ¶¶ 24, 32, 40, 54, 62, 70, 84 effectively admit to invalidity." Motion, pp. 2, 18. Unfortunately, DataCloud's First Amended Complaint (D.I. 21) transposed two words in error, and that error was reproduced at Paragraphs 24, 32, 40, 54, 62, 70, and 84.[5] See "Declaration In Support" filed as an attachment to DataCloud's concurrently-filed "Plaintiff's Motion For Leave To Amend Its First Amended Complaint To Correct Errors." DataCloud respectfully submits that it is evident from the remainder of each of those paragraphs that these two words were transposed. In fact, the sentence immediately following the transposed words, the complaint states: "Even if any limitation and/or step of the claims is 'functional'—and none are . . . .." This plainly indicates that DataCloud was alleging that the limitations are not functional.

---

[5] DataCloud has moved for leave to correct/amend the complaint to remedy that error, and it has submitted a declaration explaining the same. Specifically, in the Amended Complaint, the words "are" and "do" in the paragraphs above were transposed in error. The amended/corrected complaint corrects that error in each of the Paragraphs identified above, as follows:

  Original: "defined by what they ***do*** (not what they ***are***)"
  Corrected: "defined by what they ***are*** (not what they ***do***)"

DataCloud became aware that the two subject words were transposed when Squarespace filed its brief. Although DataCloud reached out to Squarespace to explain the issue, it nonetheless opposes the correction, and rather than proceeding on the merits, continues to argue that DataCloud's are invalid due to this error.

### III.   STATEMENT OF FACTS

1.   DataCloud originally sued Squarespace over its infringement of four patents, the '613 Patent, the '063 Patent, the '139 Patent, and the '498 Patent. D.I. 1. These four patents include 80 claims by four different groups of inventors prosecuted by four law firms before six USPTO examiners. D.I. 1-2 to 1-5. In response, Squarespace filed a Motion for Judgement on the Pleadings, which was substantively identical to the present Motion. *See* D.I. 17.

2.   DataCloud later amended its operative complaint to add three additional patents, including the '959 Patent, the '351 Patent, and the '298 Patent for a total of seven patents, including one hundred and forty-four claims from six different sets of inventors prosecuted by seven different law firms before nine different USPTO examiners. *See* D.I. 21-2 to 21-8. Squarespace responded by bringing this Motion, and with the exception of Squarespace's attempt to capitalize on a clear transposition error (see, supra, §III, ¶5), it did not include any substantive change from the original motion, despite the fact that the First Amended Complaint included three new patents from two different patent families.

### IV.   ARGUMENT

Squarespace's Motion asks this Court to make the incredible finding that all 144 claims of the seven Patents-in-Suit, which were conceived by different inventors, prosecuted by different attorneys, and reviewed by different USPTO examiners, have the same fatal defect that is proscribed by *Halliburton* and its predecessor cases. But to find in Squarespace's favor, this Court

must accept three untenable propositions: (1) it must agree with Squarespace's argument that the Patent Act of 1952 did not overrule *Halliburton,* which is a proposition explicitly contradicted by the Federal Circuit (and implicitly by the Supreme Court); (2) it must approve Squarespace's unprecedented proposal to adjudicate indefiniteness on the pleadings, despite the fact that Squarespace must show by clear and convincing evidence that the alleged functional terms fail to impart to a skilled artisan reasonably certain structure, and irrespective of the reality that every case cited by Squarespace was issued on full factual records; (3) and it must accept that a skilled artisan would be unable to identify structure in terms like "intercepting," "storing," and "displaying." None of these three proposals are defensible, as further demonstrated below.

    **A.**    **THE MOTION ASKS THIS COURT TO INVALIDATE THE CLAIMS OF THE PATENTS-IN-SUIT PURSUANT TO LAW THAT IS UNIVERSALLY RECOGNIZED AS OBSOLETE.[6]**

The authority cited by Squarespace, which stand for the proposition that functional claiming at the point of novelty violated the Patent Act of 1870, was overruled by Congress. To escape this reality, Squarespace argues that *Halliburton* still operates to bar pure functional claiming that fall outside § 112(6). However, district courts, the Federal Circuit, and the Supreme Court have foreclosed that exact argument. According to the Federal Circuit, "the 1952 Act rendered Halliburton obsolete." *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). It has further held that

> "[t]he record is clear on why paragraph six was enacted." *In re Donaldson Co.*, 16 F.3d 1189, 1194, 29 USPQ2d 1845, 1849 (Fed. Cir. 1994)(in banc). In *Halliburton*

---

[6] DataCloud notes that Squarespace spends several pages of its brief arguing that the indefiniteness inquiry is analogous to the inquiry for determining whether claims are patent eligible under 35 U.S.C. § 101. *See* Motion, pp. 15-17. However, these are two very different inquiries, and this Motion is not brought under the latter statute and therefore has no bearing on this Motion. Similarly, the idea that the Court should kill seven patents for indefiniteness absent any factual record, much less a full one, so that Squarespace might avoid the consequences of its infringement is a farce. *See* Motion, pp. 17-20. That argument likewise does not warrant a response.

> *Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 71 USPQ 175 (1946), the Supreme Court held invalid a claim that was drafted in means-plus-function fashion. ***Congress enacted paragraph six, originally paragraph three, to <u>overrule</u> that holding. In place of the Halliburton rule, Congress adopted a compromise solution, one that had support in the pre-Halliburton case law: Congress permitted the use of purely functional language in claims, but it limited the breadth of such claim language by restricting its scope to the structure disclosed in the specification and equivalents thereof***. See *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1041-42, 25 USPQ2d 1451, 1453-54 (Fed. Cir. 1993); *In re Fuetterer*, 319 F.2d 259, 264 n.11, 138 USPQ 217, 222 n.11 (CCPA 1963).

*Greenberg*, 91 F.3d at 1584 (emphasis added). To be sure, "there is no statutory ban on the use of the 'functional' language[.]" *In re: Fuetterer*, 319 F.2d 259, 265 (C.C.P.A. 1963).

District courts have likewise recognized *Halliburton's* abrogation. Indeed, in addressing a defendant's attempt to invoke the very cases repeatedly cited by Squarespace, it was noted that these cases, each of which were

> decided prior to the Patent Act of 1952, stand for the outdated proposition that "[f]unctional statements set forth in a claim cannot be relied upon to endow the claim with patentable subject matter" and condemn claims that use "conveniently functional language at the exact point of novelty." *General Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371, 58 S. Ct. 899, 82 L. Ed. 1402, 1938 Dec. Comm'r Pat. 813 (1938). That judicial attitude culminated in the Supreme Court's *Halliburton* decision. This was remedied by Congress, in the enactment of §112 in the Patent Act of 1952, which made it 'unquestionable that some measure of greater liberality in the use of function expressions in combination claims is authorized than had been permitted by some court decisions, and that decisions such as that in Halliburton are modified or rendered obsolete.' As a result, the Federal Circuit's predecessor was able to conclude, in 1963, that:
>
> "Functional" language in claims is not expressly condemned by the patent statutes. On the contrary, the only portion of Title 35, U.S.C., which makes any reference to the use of statements of function specifically authorizes such use. If we are to affirm the Patent Office rejection based on "functionality," therefore, we must do so on the basis that (1) the type of "functionality" involved here is neither comprehended nor authorized by the third paragraph of 35 U.S.C. 112 and (2) there exists a body of extrastatutory case law which specifically condemns the type of "functionality" involved in the instant claims.

*Jamison v. Olin Corp.-Winchester Div.,* No. 03-1036-KI, 2005 U.S. Dist. LEXIS 49109, *62-63 (D. Or. Oct. 4, 2005) (<u>citing</u> *In re: Fuetterer*, 319 F.2d at 265).

In fact, the Supreme Court has three times declined to review the question of whether *Halliburton* should still bar any functional claims not covered by § 112(6), the last as recently as 2019. Each of these petitions sought to reverse the Federal Circuit by arguing that the general rule against functional claiming, starting with *Morse* and up through *Halliburton*, was not abrogated by the 1952 Patent Act.[7] And in every one of them, the Supreme Court denied *certiorari*. *See*, *supra*, fn. 5. Without doubt, Squarespace's argument is foreclosed by the governing authority.

**B.     SQUARESPACE ASKS THIS COURT TO FIND THAT THE CLAIMS OF THE PATENTS-IN-SUIT ARE INDEFINITE WITHOUT ANY ANALYSIS OR FACTUAL RECORD.**

Squarespace asks this Court to invalidate these claims on the pleadings, which departs from the standard and approach to adjudicating indefiniteness under controlling law. In fact, even the authority cited by Squarespace in its Motion adjudicated indefiniteness on a full factual record. *See Morse*, 56 U.S. 62; *Corning v. Burden*, 56 U.S. 252 (1854); *Burr v. Duryee*, 68 U.S. 531 (1864); *Fuller v. Yentzer*, 94 U.S. 288 (1877); *Risdon Iron & Locomotive Works v. Medart*, 158

---

[7] *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F.Supp.3d 629, 645 (E.D. Tex. 2017) (finding a functional claim limitation was neither subject to § 112(6) nor indefinite because defendant did not prove by clear and convincing evidence that the functional limitation would not have sufficient structure to a skilled artisan), *affirmed*, 739 F.App'x 643, 643 (Fed. Cir. 2018), *petition for writ*, *Eli Lilly & Co. v. Erfindergemeinschaft UroPep GbR*, No. 2019 U.S. S. Ct. Briefs LEXIS 2067 (arguing that "there can be no serious doubt that the general rule against functional claiming survived the enactment of Section 112(f). This Court had articulated the rule in a long line of decisions beginning with *O'Reilly v. Morse*, 56 U.S. 62 (1853), long before it applied the rule to a combination claim in *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1 (1946). When Congress enacted what was then Section 112, ¶ 6, as part of the 1952 Patent Act, it abrogated the specific holding of *Halliburton*, but it did not disturb the broader rule against functional claiming"), *cert. denied*, *Eli Lilly & Co. v. Erfindergemeinschaft UroPep GbR*, 140 S. Ct. 449, 205 L.Ed.2d 252 (Oct. 21, 2019); *see also Cox. Communs., Inc. v. Sprint Commun. Co. LP*, No. 16-1106, 2017 U.S. S. Ct. Briefs LEXIS 924, at *11 (Mar. 13, 2017) ("Do *Halliburton*, and other decisions of this Court that bar pure functional claiming still control where § 112, ¶ 6 does not apply?"), *cert. denied*, *Cox Communs., Inc. v. Sprint Commun. Co. LP*, 137 S.Ct. 2267, 198 L.Ed.2d 699 (June 19, 2017); *Nautilus, Inc. v. Biosig Instruments, Inc.*, No. 15-561, 2015 U.S. S.Ct. Briefs LEXIS 3876, at *7, 9, 36-43 (Oct. 30, 2015) ("This Court should review the Federal Circuit precedent permitting purely functional claim limitations, and overrule it as inconsistent with this Court's precedent."), *cert. denied*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 577 U.S. 1009 (2015).

U.S. 68 (1895); *Westinghouse v. Boyden Power Brake Co.*, 170 U.S. 537 (1898); *Busch v. Jones*, 184 U.S. 598 (1902); *Holland Furniture Co. v. Perkins Glue Co.*, 277 U.S. 245 (1928), *General Electric Co. v. Wabash Appliance Corp.*, 304 U.S. 364 (1938); *United Carbon*, 317 U.S. 228; *Halliburton*, 329 U.S. 1; *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 336 U.S. 271 (1949). These cases were all decided on full factual records, which is the proper approach to these issues.

The reason that courts reach these issues after a factual record is developed is because they often involve detailed factual inquiries. And "[a]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp.*, 319 F.3d at 1366; *see also Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008). Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g., Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318, 333-336 (2015). To determine whether a claim imparts the requisite structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function. *Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 F. App'x 876, 884-85 (Fed. Cir. 2018).

Drafting claim language with functional elements—especially the method claims like those at issue here—has long been approved by the courts. When such functional language is used and the specter of indefiniteness is raised, the analysis required to examine the issue is informed by the knowledge of skilled artisans in light of the written description. This has been true since the 1800s, and it is true today. Over 100 years ago, Justice Bradley held that "[i]f the mode of doing it . . . or the apparatus in or by which it may be done, is sufficiently obvious to suggest itself to a person

skilled in the particular art, it is enough, in the patent, to point out the process to be performed, without giving superogatory directions as to the apparatus or the method to be employed." *Risdon Iron*, 158 U.S. at 76 (1895). In fact, even the "reasonable certainty" standard of *Nautilus* does not proscribe the use of functional claiming. In *BASF Corp.*, the Federal Circuit held that

> the Nautilus standard of "reasonable certainty" does not exclude claim language that identifies a product by what it does. ***Nothing inherent in the standard of "reasonable certainty" precludes a relevant skilled artisan from understanding with reasonable certainty what compositions perform a particular function. Not surprisingly, we have long held that nothing in the law precludes, for indefiniteness, "defining a particular claim term by its function."*** *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374-75 (Fed. Cir. 2014); *see Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016) (explaining that claims "are not per se indefinite merely because they contain functional language"), *cert. denied*, 137 S.Ct. 2267, 198 L.Ed.2d 699 (2017); *Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (explaining that "apparatus claims are not necessarily indefinite for using functional language"); *In re: Swinehart*, 439 F.2d 210, 212, 58 C.C.P.A. 1027 (CCPA 1971) (ruling that "there is nothing intrinsically wrong with the use of such a technique in drafting patent claims"). What is needed is a context-specific inquiry into whether particular functional language actually provides the required reasonable certainty.
>
> . . .
>
> "[A]n inventor need not explain every detail because a patent is read by those of skill in the art." *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1367 (Fed. Cir. 2011). The mere observation of information not "recited" does not answer the question whether a person of ordinary skill in the art would need to be given the . . . information to understand, with reasonable certainty, [the claim terms].

*BASF Corp.,* 875 F.3d at 1366. Over time, the Federal Circuit has consistently upheld functional claims when structural context can be provided by a skilled artisan's knowledge:

> [W]hen a claim limitation is defined in "purely functional terms," a determination of whether the limitation is sufficiently definite is "highly dependent on context (e.g., the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area)."

*Biosig Instruments, Inc.*, 783 F.3d at 1378 (quoting *M-I LLC*, 514 F.3d at 1255; *see also Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir.

2008); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1099, 1100-11 (Fed. Cir. 2000).

This is true even when a claim is deemed "functional" yet falls outside § 112(6). For instance, in *Greenberg v. Ethicon Endo-Surgery Inc.*, the Federal Circuit found that a claim term was functional, did not invoke § 112(6), and was definite nonetheless. *See* 91 F.3d at 1584. In doing so, it stated "[i]t is true that the [claim term] does not call to mind a single well-defined structure[.]" *Id.* at 1583. However, "[w]hat is important is not simply that a [claim term] is defined in terms of what it does, but that the term, as the name for structure, ***has a reasonably well understood meaning in the art***. *Id.* The "means treatment will not apply if persons of ordinary skill in the art reading the specification understands the term used to be the name for the structure that performs the function, 'even if the term covers a broad class of structures and even if the term identifies structures by their function.'" *TecSec, Inc. v. Int'l Bus. Machs. Corp.,* 731 F.3d 1336, 1347 (Fed. Cir. 2013).

At the pleading stage of the case, when no discovery has been taken and no terms construed, a finding of indefiniteness is premature and lacks support in the law.

### C. EVEN IF SQUARESPACE IS CORRECT THAT EVERY CLAIM USES PURELY FUNCTIONAL LANGUAGE, THE TERMS IDENTIFIED IMPART SUFFICIENT STRUCTURE TO SKILLED ARTISANS.

As stated above, Squarespace relies primarily on its hope that the Court finds that *Halliburton* remains good law, which is improbable given the authority cited above. The Motion otherwise provides no real analysis of why it believes that each of the targeted terms is indefinite. As a matter of fact, the entirety of the treatment of the claim terms is provided in the form the following paragraph "template," which is repeated seven times over, save for replacing the greyed text with the numbers or language from each patent:

> **U.S. Patent No. [X,XXX,XXX]("'XXX Patent**). Asserted Claim X of the 'XXX Patent recites "[a] [METHOD/SYSTEM] [INSERT CLAIM LANGUAGE] that comprises [INSERT SEVERAL TERMS]. Under the reasoning of the case law cited on pp. 3-10, *supra*, the recited [INSERT SAME SEVERAL TERMS] each describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562; *see* D.I. XX ¶¶ XX-XX; D.I. XX ¶¶ XX-XX. Under the reasoning of the case law cited on pp. 3-10, *supra*, the [INSERT SAME SEVERAL TERMS] recitals each describes a "function of a machine" which, as a matter of law, "cannot be patented." *Westinghouse*, 170 U.S. at 562; *see* D.I. XX ¶¶XX-XX. And as with the claims held invalid in *Halliburton* and *Morse*, claim X of the 'XXX Patent is worded in such a way as to encompass any and every computer system that performs the functions recited in the claim, irrespective of what might be a computer system's physical structure or computer program code. D.I. XX ¶ XX; D.I. XX ¶¶ XX-XX. On its face, claim X of the 'XX Patent violates the "particularly pointing out" provision of 35 U.S.C. § 112 ¶ 2 and its associated "rule that a patentee may not broaden his claims by describing the product in terms of function." *United Carbon*, 317 U.S. at 234.

That paragraph, repeated seven times, is the entirety of the analysis provided. *See* Motion, pp. 11-15. Given that, it is unclear if Squarespace expects DataCloud or the Court to take the time to actually examine the claim language.

Although DataCloud has no desire to do Squarespace's work for it, it will provide a short analysis for the terms in the first patent that is critiqued in the Motion just to show the curious nature of Squarespace's position. The Motion first attacks Claim 8 of the '613 Patent as reciting the steps of "intercepting," "storing," and "examining" that are allegedly indefinite because they describe a "function of a machine." However, each of this "functions" impart well known structure to this skilled in the art. DataCloud specifically pled that in its Amended Complaint (at D.I. 21, ¶ 24), where it alleged that "[e]ven if any limitation and/or step of the claims is 'functional'—and none are—the teachings of the '613 Patent provide to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date." *Id.*

Of course, this is not wishful thinking—it is a factual allegation. And the specification of

the '613 Patent supports it. For instance, it teaches that "[t]he interception of system calls is known today[.]" D.I. 21-2 at 2:25. It goes on to explain that

> [i]n order to intercept a system call, a pointer in the system call vector table to the system call is replaced with a pointer to alternative object code to be executed instead of the system call. Then, when the operating system reads the system call vector table in response to the system call being requested, the operating system will read the pointer to the alternative object code, and the alternative object code will execute instead of the system call. The alternative object code is typically known as a system call wrapper.

*Id.* at 1:66-2:7. It goes on to explain in great detail all aspects of "intercepting system calls" through the remainder of the patent. To say that a skilled artisan would not understand "intercepting" a system call to have structure is to entirely ignore the patent.

The specification is equally forthcoming about "storing." A skilled artisan would not need to go much past Figure 3 of the '613 Patent to understand structure that is reasonably certain. For example, and without limiting the term "storing," one structure is "media," and another "computer memory." D.I. 21-2 at Fig. 3 (reproduced with emphasis below).



FIG. 3

Although storing is discussed throughout the specification, even the "Field of Invention" discusses the fact that the invention related "to disambiguating communication channel file descriptors from file descriptors that that are associated with files ***stored on physical media***." D.I. 21-2, at 1:7-11.

The same can be said for "examining," which even if Squarespace could credibly claim that a skilled artisan would, absent the specification, not understand this term to impart structure, once that person read the teachings of the '613 Patent, it would have no confusion. The specification repeatedly teaches the artisan to that "the system call wrapper examines the indicator table to determine whether the file being accessed is of the desired type." D.I. 21-2, at Abstract. The artisan can "examine stored indicators to determine with what file type it is associated." *Id.* at Fig 5A and 5B. The specification further teaches that,

> The stored indicators can subsequently be *examined by any process to disambiguate file descriptors*. For example, because communication channel file descriptors are indicated in the table, *any process can examine the table to determine whether or not a given file descriptor is a communication channel file descriptor*. In an operating system in which every file descriptor either is a communication channel file descriptor or a descriptor of a file stored on media *the table of indicators concerning file descriptors can also be examined to determine if a given file descriptor is associated with a file stored on media*. This is true because if the table does not contain an indicator for a given file descriptor, that file descriptor is not a communication channel file descriptor, and therefore is a descriptor of a file stored on media.

D.I. 21-2, at 5:2-15. Here again, the teachings are too substantial to quote all of them, but there is no doubt that a skilled artisan would understand "examining" to provide sufficient structure just based on that person's knowledge, never mind after reading the specification.

The other terms identified by Squarespace provide structure that is reasonably certain to a skilled artisan, even if they are characterized by Squarespace as being identified by their function. For each of the Patents-in-Suit and their subject limitations, DataCloud similarly pled that in its Complaint that "[e]ven if any limitation and/or step of the claims is 'functional' . . . the teachings of the '[Patent-in-Suit] provide to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date." D.I. 21 ¶¶ 24, 32, 40, 54, 62, 70, 84. Squarespace has not met

its burden to prove, by clear and convincing evidence, that the claims of the Patents-in-Suit are indefinite.

## V. CONCLUSION

For all the reasons set forth herein, the Motion should be denied.

Dated: August 11, 2021              Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
**HENINGER GARRISON DAVIS, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

*Attorneys for Plaintiff DataCloud Technologies, LLC*

\* admitted *pro hac vice*

### CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

Date: August 11, 2021              */s/ Stamatios Stamoulis*
                                   Stamatios Stamoulis #4606