## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

DATACLOUD TECHNOLOGIES, LLC,
      Plaintiff,

v.

SQUARESPACE, INC.,
      Defendant.

CIVIL ACTION NO. 1:21-cv-00164-LPS

## JURY TRIAL DEMANDED

### ~~FIRST~~ SECOND **AMENDED COMPLAINT**

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud"), by and through its undersigned counsel, files this ~~First~~ Second Amended Complaint for Patent Infringement against Defendant Squarespace, Inc. (hereinafter, "Defendant" or "Squarespace") as follows:

### NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, **Exhibit J, Exhibit K,** and **Exhibit L,** respectively:

|  | **U.S. Patent No.** | **Title** |
|---|---|---|
| A. | 6,560,613 | Disambiguating File Descriptors |
| B. | 6,651,063 | Data Organization And Management System And Method |
| C. | 8,607,139 | System And Process For Managing Content Organized In A Tag-Delimited Template Using Metadata |
| D. | 8,762,498 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain |
| J. | 7,209,959 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network |
| K. | 7,246,351 | System And Method For Deploying And Implementing Software Applications Over A Distributed Network |
| L. | 7,398,298 | Remote Access And Retrieval Of Electronic Files |

2.      Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.      DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4.      Based upon public information, Squarespace is a corporation duly organized and existing under the laws of the state of Delaware since October 29, 2007.

5.      Based upon public information, Squarespace has its principal place of business located at 225 Varick Street, 12th Floor, New York, New York, 10014 (New York County).

6.      Defendant may be served through its registered agent, Incorporating Services, Ltd., 3500 S. Dupont Highway, Dover, Delaware 19901.

## JURISDICTION AND VENUE

7.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

8.      The Court has personal jurisdiction over Squarespace because: Defendant has minimum contacts within the State of Delaware and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District; Defendant has sought protection and benefit from the laws of the State of Delaware and is incorporated there; Defendant regularly conducts business within the State of Delaware and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and in this District.

9.      More specifically, Squarespace directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services

in the United States, the State of Delaware, and in this District.

10.     Based upon public information, Squarespace solicits customers in the State of Delaware and in this District and has many paying customers who are residents of the State of Delaware and this District and who use its products in the State of Delaware and in this District. Squarespace is also incorporated in the State of Delaware and in this District.

11.     Venue is proper pursuant to 28 U.S.C. §1400(b) because Squarespace resides in the District of Delaware because of its formation under the laws of Delaware.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Squarespace resides in the District of Delaware because of its formation under the laws of Delaware, which subjects it to the personal jurisdiction of this Court.

## BACKGROUND INFORMATION

13.     The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations.

14.     Plaintiff is the owner of the Patents-in-Suit, and possesses all right, title and interest in the Patents-in-Suit including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages.

15.     Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

16.     Plaintiff does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

17.     By letter dated April 16, 2020, DataCloud's licensing agent sent Defendant information in which it identified DataCloud's patent portfolio, which includes each of the Patents-in-Suit.  *See* **Exhibit E** (hereinafter, the "Licensing Letter").  By letter dated July 14, 2020, DataCloud put Defendant on notice of its infringement of the Patents-in-Suit.  *See* **Exhibit F**

(hereinafter, the "Notice Letter")

**DEFENDANT'S PRODUCTS AND SERVICES**

18.     Based upon public information, Squarespace owns, operates, advertises, and/or controls the website www.squarespace.com through which it advertises, sells, offers to sell, provides and/or educates customers about its website design products and services.  *See* **Exhibit G.**

19.     Based upon public information, Defendant provides training and educational information for its products.  *See* **Exhibit H** and **Exhibit I.**

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,560,613**

20.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

21.     U.S. Patent No. 6,560,613 (hereinafter, the "'613 Patent"), was issued on May 6, 2003 after full and fair examination by the USPTO of Application No. 09/500,212 which was filed on February 8, 2000.  *See* Ex. A.  A Certificate of Correction was issued on August 26, 2003.  *See id.*

22.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '613 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its website design/website builder product.

23.     Upon information and belief, Squarespace's website design/website builder product meets each and every element of at least Claim 8 of the '613 Patent, either literally or equivalently.

24.     A person skilled in the art covered in the '613 Patent would understand that each of the limitations and/or steps in the claims, including Claim 8, of the '613 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is

"functional"—and none are—the teachings of the '613 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

25.     Based upon public information, Squarespace's website design/website builder product has infringed one or more claims of the '613 Patent, including Claim 8, because it provides a method for disambiguating file descriptors in a computer system through a process which intercepts the system calls that store files on media, stores one or more file type indicators for each file descriptor in a table, and determines what file type is associated with the file descriptor based on a review of the stored file type indicators.  KVM, used in Squarespace's website design/website builder product, employs disambiguation of file descriptors (files/sockets/pipes) that are used in shadowed I/O system call routines by intercepting them, storing related indicators (*e.g.*, reference to images), and examining those stored indicators to determine the associated file type.

26.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

27.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,651,063

28.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

29.     U.S. Patent No. 6,651,063 (hereinafter, the "'063 Patent"), was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911 which was filed on January 28, 2000.  *See* Ex. B.  A Certificate of Correction was issued on

February 3, 2004. *See id.*

30.    Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '063 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Squarespace App" for Android.

31.    Upon information and belief, the "Squarespace App" for Android meets each and every element of at least Claim 4 of the '063 Patent, either literally or equivalently.

32.    A person skilled in the art covered in the '063 Patent would understand that each of the limitations and/or steps in the claims, including Claim 4, of the '063 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is "functional"—and none are with the exception of those that specifically invoke the "means" language—the teachings of the '063 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

33.    Based upon public information, the "Squarespace App" for Android has infringed one or more claims of the '063 Patent, including Claim 4 because it provides a method for storing and controlled access of data in a repository by storing information in an "information pack" (uploading to servers/saving image files, *e.g.,*com.squarespace.android.squarespaceapp_1.0.0-1000007_miniAPI23 . . .) to which is associated the address of a data repository, a "category identifier" (*e.g.*, "data" directory), and a "provider identifier" ("Squarespace App").  The information pack is sent to the specified data repository and stored there in a location reserved for the specified category identifier that is specifically created for the information pack (*e.g.*, file folder

of Squarespace App is reserved for information), and a "custom category identifier" (*e.g.*, "custom category identifier" can be the digital signature for the Squarespace App) is assigned to the information pack.   The custom category identifier is subsequently used to identify other information packs that should be stored in the same location based on matching category identifiers (*e.g.*, valid Android APK files contain a signature which allows to identify the author of the APK file, which allows verification that an updated version comes from the same author).

34.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

35.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,607,139

36.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

37.     U.S. Patent No. 8,607,139 (hereinafter, the "'139 Patent"), was issued on December 10, 2013 after full and fair examination by the USPTO of Application No. 10/834,595 which was filed on April 29, 2004.  *See* Ex. C.  A Certificate of Correction was issued on June 24, 2014.  *See id.*

38.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed, and continues to infringe, one or more claims of the '139 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its website design/website builder product.

39.     Upon information and belief, website design/website builder product meets each and every element of at least Claim 1 of the '139 Patent, either literally or equivalently.

40.     A person skilled in the art covered in the '139 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '139 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is "functional"—and none are with the exception of those that specifically invoke the "means" language—the teachings of the '139 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

41.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '139 Patent, including Claim 1.  Squarespace's website design/website building product includes a processor, coupled to a memory, configured to execute or facilitate execution of computer-executable components (Squarespace uses servers with processors and memory), comprising: a content management component (Squarespace's "Styles" tool) configured to: display a graphical interface based on a metadata template (a Squarespace design template), the metadata template comprising an object that represents a structure and an appearance of a web page (a "Donate" page to "Make a Donation"), wherein the object is based on a class ("Donate") stored in a base template (including a "Title" and "Short Description," where it is noted that "Information about your cause to display on Donation page"), and wherein the graphical interface (a "Take Action" page) comprises an input field (an "Amount" and "Label") corresponding to the object, the input field defining a property of a data entry field ("Example 1 'Property' - $10.00" or "Example 2 'Property' - $20.00"), and generate a data entry form ("Your Site Title: Make Donation") comprising the data entry field, wherein the data entry field is configured to accept input corresponding to content of the object (a user may select "$10.00" donation or "$20.00"

donation); and a web page generator configured to generate the web page based on the metadata template (Squarespace's website "Preview" from the website builder tool), wherein the web page comprises the content represented by the input (a means to accept donations of at least $10.00 or $20.00).

42.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '139 Patent.

43.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '139 Patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Website Builder in an infringing manner.

44.     To the extent that Defendant is not the only direct infringer of one or more claims of the '139 Patent, it instructs its customers on how to use its website design/website builder product in ways that infringe one or more claims of the '139 Patent through its support and sales activities.  *See* Ex. H, Ex. I.

45.     Despite knowledge of the '139 Patent as early as the date of its receipt of the Notice Letter (Ex. F) and perhaps as early as the Licensing Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '139 Patent.  Based upon public information, the provision of and sale of website design/website builder product is a source of revenue and a business focus for Defendant.

46.     Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '139 Patent by, at

a minimum, providing and supporting its website design/website builder product and instructing its customers on how to use it in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex. H, Ex. I.

47.     Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Website Builder.

48.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

49.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,762,498

50.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

51.     U.S. Patent No. 8,762,498 (hereinafter, the "'498 Patent"), was issued on June 24, 2014 after full and fair examination by the USPTO of Application No. 13/731,731 which was filed on December 31, 2012.  *See* Ex. D.

52.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '498 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its website design/website builder product and hosting.

53.     Upon information and belief, the website design/website builder product and

hosting meets each and every element of at least Claim 1 of the '498 Patent, either literally or equivalently.

54.     A person skilled in the art covered in the '498 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '498 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is "functional"—and none are—the teachings of the '498 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

55.     Based upon public information, website design/website builder product and hosting has infringed one or more claims of the '498 Patent, including Claim 1, because it provides a system of hardware and software that is configured to respond to a request for data by identifying a virtual namespace destination IP address (*e.g.*, 198.185.159.176 ) from a selection of categories (*e.g.*, 160703.net, 185.159.176, 23.177, 360photoinc.com, abtechtechnologies.com, sqsp.net, squaredealcapital.com, squarespace.com, st-matthias.ca, staronfilm.pl) that is related to the virtual namespace destination address (*e.g.*, the category of "squarespace.com" is related to the virtual namespace destination address of "www.squarespace.com") to determine a device with a specific forwarder IP address (Squarespace operates a forwarder device with a forwarder IP address and the selected web server will operate with a destination IP address and instruct it to send the request for data to the destination IP address and the forwarder device it instructed to send the request data to the destination IP address (*e.g.*, through a WWW server and SNI Routing).

56.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

57.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,209,959

58.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

59.     U.S. Patent No. 7,209,959 (hereinafter, the "'959 Patent"), was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000.  *See* Ex. J.

60.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Squarespace Website Hosting.

61.     Upon information and belief, the Squarespace Website Hosting meets each and every element of at least Claim 1 of the '959 Patent, either literally or equivalently.

62.     A person skilled in the art covered in the '959 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '959 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is "functional"—and none are—the teachings of the '959 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

63.     Based upon public information, Defendant has infringed one or more claims of the '959 Patent, including Claim 1, because it provides a method of, in response to a request (*e.g.*,

""Client Hello") by a client (*e.g.*, 10.1.10.225) to initiate communication with a destination website (*e.g.*, www.squarespace.com); setting up a forwarding session (*e.g.*, from the internet to a WWW server) between the client (*e.g.*, internet device) and a destination server corresponding to the destination website (*e.g.*, WWW server), the forwarding session employing a forwarder disposed between (*e.g.*, a front-end server switch) the client and the destination server to forward packets sent from the client to the destination server and to forward packets sent from the destination server to the client (*e.g.* bilateral communications); employing the forwarder (*e.g.* front-end server switch), to transfer packets (*e.g.,* ethernet or others) between the client (*e.g.*, internet device) and the destination server (*e.g.*, WWW server) during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder (*e.g.*, the WWW server has a direct TCP connection between a local address of, say, 172.31.15.21 and a client address of, say, 96.72.88.222; thus, neither the client or the destination server is aware of the employment of the forwarder); employing a controller configured to communicate (*e.g.*, firewall) with the forwarder (*e.g.*, front-end server switch) and a domain name server (*e.g.*, a DNS), wherein the controller queries the domain name server to resolve the name of the destination website (*e.g.*, www.squarespace.com) associated with the destination server (*e.g.*, WWW server) and initiates communication (*e.g.*, between the firewall and front-end server switch) with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver (*e.g.*, router) configured to communicate with the controller (*e.g.*, firewall) and the client (*e.g.*, internet device), wherein the deceiver receives the request by the client to initiate communication (*e.g.*, from the internet to the router) with the destination website (*e.g.*, www.squarespace.com on a WWW server) and initiates the controller to query the domain name

server to resolve the name of the destination website associated with the destination server (*e.g.*, the router both (i) receives the request and (ii) sends the data from the WWW server in a manner that makes the router appear to be the source of the data, when the source of the data is actually the WWW server);  and in response to the controller (*e.g.*, router) receiving the answer from the domain name server and initiating communication with the forwarder initiating the forwarding session.

64.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

65.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,246,351

66.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

67.     U.S. Patent No. 7,246,351 (hereinafter, the "'351 Patent"), was issued on July 17, 2007 after full and fair examination by the USPTO of Application No. 10/081,921 which was filed on February 20, 2002.  *See* Ex. K.  A Certificate of Correction was issued on November 20, 2007. *See id.*

68.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '351 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its "Squarespace App" for Android, among others.

69.     Upon information and belief, the Squarespace App meets each and every element of at least Claim 1 of the '351 Patent, either literally or equivalently.

70.     A person skilled in the art covered in the '351 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '351 Patent are defined by what they are~~do~~ (not what they ~~do~~are).  Even if any limitation and/or step of the claims is "functional"—and none are—the teachings of the '351 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

71.     Based upon public information, the Squarespace App has infringed one or more claims of the '351 Patent, including Claim 1, because it provides a system for deploying applications over a distributed network (*e.g.*, offers its application over the internet) to an Internet-enabled device (*e.g.*, a smartphone with Android v.6.0 and up) for interacting with a server (*e.g.*, at www.squarespace.com or 198.185.159.176), the server being in communication with the distributed network and having text files containing program logic (*e.g.*, the system allows for "[a]dd[ing] custom CSS, HTML, JavaScript, Markdown, or Plain Text to [a] page"), the system comprising: an application assembler for storing on and running on the Internet-enabled device (*e.g.*, directory in smartphone with Squarespace App installed), the application assembler for downloading one or more text files (*e.g.*, the text file is encrypted and transferred in "application data" within the TLS session) from the server (*e.g.*, 198.185.159.176), retrieving the program logic from each of the downloaded text files, and assembling the retrieved program logic into a functioning application (*e.g.*,  a website application) and running the functioning application on the Internet-enabled device (*e.g.*,  running the website application on the smartphone), wherein the functioning application provides a graphical user interface for receiving and interpreting user inputs to the Internet-enabled device (*e.g.*, the Squarespace App provides a graphical user interface

for receiving and interpreting user inputs).

72.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '351 Patent.

73.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '351 Patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Squarespace App in an infringing manner.

74.     To the extent that Defendant is not the only direct infringer of one or more claims of the '351 Patent, it instructs its customers on how to use its Squarespace App in ways that infringe one or more claims of the '351 Patent through its support and sales activities.  *See* Ex. H, Ex. I.

75.     Despite knowledge of the '351 Patent as early as May 5, 2021, and perhaps as early as the Licensing Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use the Squarespace App, in a manner which infringes one or more claims of the '351 Patent.  Based upon public information, the provision of and sale of the Squarespace App is a source of revenue and a business focus for Defendant.

76.     Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '351 Patent by, at a minimum, providing and supporting its Squarespace App and instructing its customers on how to use it in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information.  *See* Ex. H, Ex. I.

77.     Based upon public information, Defendant knew that its actions, including, but not

limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Squarespace App.

78.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

79.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,398,298

80.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

81.     U.S. Patent No. 7,398,298 (hereinafter, the "'298 Patent"), was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803which was filed on March 23, 2007.  *See* Ex. L.

82.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed and continues to infringe one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises its Squarespace Websites Hosting with application for managing multiple sites and contributors ("Contributor Application").

83.     Upon information and belief, the Contributor Application meets each and every element of at least Claim 1 of the '298 Patent, either literally or equivalently.

84.     A person skilled in the art covered in the '298 Patent would understand that each of the limitations and/or steps in the claims, including Claim 1, of the '298 Patent are defined by what they are~~do~~ (not what they ~~do~~are).   Even if any limitation and/or step of the claims is

"functional"—and none are—the teachings of the '298 Patent provides to any skilled artisan sufficient structure, material, or acts necessary to perform the recited function or provides information sufficiently identifying a finite group of structures, materials, or acts necessary to perform the recited function that were well known to skilled artisans at the priority date.

85.     Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '298 Patent, including Claim 1, because the Contributor Application is a system for providing remote control of data directory structures (*e.g.*, webpages and functions accessible to discrete users) across at least one communications network (*e.g.*, Internet) that has a computer server (*e.g.*, WWW server), the computer server coupled to the communications network (*e.g.*, Internet); a remote data directory structure management computing application (*e.g.*, the "Invite Contributor" dashboard) operating on the computer server (*e.g.*, WWW server) to process received requests for remote data directory management (*e.g.*, "+ Add Contributor") of desired data residing in directory structures by participating users (*e.g.*, contributors that have been given permissions); and a profile data store (*e.g.*, a secure SQL server/database) comprising information relating to the data and data directory structures (*e.g.*, information on permissions, files, and operations available to "Contributors" "Administrator," "Content Editor," "Billing," "Reporting," "Comment Moderator," "Trusted Commenter," and "Store Manager") accessible to each of the participating users (*e.g.*, "Contributors"), wherein the profile data store is queried for the data directory structures accessible to each of the participating users (*e.g.*, to determine "Contributor" permissions), wherein further a single directory structure (*e.g.*,  permission for a "Contributor" must be "select[ed] from one of the seven website roles") from among a plurality of the data directory structures associated with the profile data store (*e.g.*, "Administrator," "Content Editor," "Billing," "Reporting," "Comment Moderator," "Trusted Commenter," and "Store Manager") is

selected by each of the participating users for modification (the invited "Contributor" can "ACCEPT INVITATION").

86.     Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '298 Patent.  *See* Ex. H, Ex. I.

87.     Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '298 Patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use the Contributor Application in an infringing manner.

88.     To the extent that Defendant is not the only direct infringer of one or more claims of the '298 Patent, it instructs its customers on how to use the Contributor Application in ways that infringe one or more claims of the '298 Patent through its support and sales activities.  *See* Ex. H, Ex. I.

89.     Despite knowledge of the '298 Patent as early as May 5, 2021, and perhaps as early as the Licensing Letter (Ex. E), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '298 Patent.  Based upon public information, the provision of and sale of Contributor Application is a source of revenue and a business focus for Defendant.

90.     Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '298 Patent by, at a minimum, providing and supporting Contributor Application and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's

website including information brochures, promotional material, and contact information.  *See* Ex. H, Ex. I.

91.     Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Contributor Application.

92.     Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

93.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

94.     Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

95.     Plaintiff respectfully requests the following relief:

A.     An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Squarespace;

B.     An adjudication that Squarespace has induced infringement of one or more claims of the U.S. Patent Nos. 8,607,139, 7,246,351 and 7,398,298 based upon pre-suit knowledge of those Patents;

C.     An award of damages to be paid by Squarespace adequate to compensate Plaintiff for Squarespace's past infringement, including interest, costs, and

disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Squarespace's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D.      That this Court find that Squarespace willfully infringed U.S. Patent Nos. 8,607,139, 7,246,351 and 7,398,298;

E.      That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

F.      Any further relief that this Court deems just and proper.

Dated: ~~June~~ August 11, 2021                    Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jmcdonough@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

***Attorneys for Plaintiff DataCloud Technologies, LLC***

* admitted *pro hac vice*

**LIST OF EXHIBITS**

A.  U.S. Patent No. 6,560,613

B.  U.S. Patent No. 6,651,063

C.  U.S. Patent No. 8,607,139

D.  U.S. Patent No. 8,762,498

E.  Letter dated April 16, 2020 from DataCloud's Licensing Agent ("Licensing Letter")

F.  Letter dated July 14, 2020 from DataCloud's Counsel ("Notice Letter")

G.  Webpage: Products Offered

H.  Webpage: Training for Products

I.  Webpage: Support for Products

J.  U.S. Patent No. 7,209,959

K.  U.S. Patent No. 7,246,351

L.  U.S. Patent No. 7,398,298

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

Date: ~~June~~ August 11, 2021                    */s/ Stamatios Stamoulis*
                                                  Stamatios Stamoulis #4606